## FIRE ASSOCIATION VS. GILMER.

Books of an insurance company showing payments for licenses to carry on certain kinds of business are not evidence to show that such business is forbidden by the insurance policy.

Portions of the charge excepted to must be quoted *totidem verbis*.

Using a part of a building to make brooms does not convert it into a mill or manufactory.

Whether bleaching brooms is an increase of risk is a question for the jury.

Whether keeping on hand a barrel of sulphur, to be used, was storing sulphur is a question for the jury.

Error to Common Pleas No. 1, of Philadelphia County. No. 222 January Term, 1884.

The charge of the Court contains the facts in the case and was as follows:

This suit, as you have heard, is brought upon a policy of insurance to recover for a total loss of the building insured. There is no denial at all that this policy was duly and properly executed by the company on the fourteenth day of August, 1865. There is no doubt, because it has not been controverted, that this building was destroyed by fire; there is no doubt that it has been rebuilt at the expense of the insured. The carpenter who came here and had charge of these buildings, as an agent, was very familiar with it, and testified positively

that he rebuilt it exactly as it was built before, and that the prices charged by him are the usual and ordinary prices for such work. That is not controverted. The notice which the policy requires was sent to the defendant, showing the fact of the entire loss of the building, and if they had intended to dispute the amount to be recovered, they had a full and fair opportunity to do so, having offered no evidence whatever as to the value of the property, so as to impair the testimony of the carpenter. If you should think the plaintiff is entitled to recover at all she should be entitled to recover the amount of damage which the plaintiff has been shown to have sustained.

Although there is no denial of that, the defendant defends against the payment of this policy on two or three grounds.

He first says, and it is not controverted, that by the survey of this building, which accompanies the policy, it appears that it was the premises occupied as a four-story brick store, that was originally insured in this company. By the 13th section of the policy it is stated and agreed that the survey taken at the time of this insurance and signed by the insured shall be the only evidence of the state of the building, and if any alteration or change be made therein, etc.

Now the defendant says that this provision has been violated, and that, therefore, this policy is void and of no effect.

He states the violation to consist in a violation in two or three particulars of the terms and conditions of the permanent insurance.

He first says that these provisions enact that persons exercising any particular occupation "herein mentioned, or making use, etc." He then enumerates various things—mills, manufactories. That I understand to mean, if these premises insured as a store are used as mills, manufactories, etc., without the payment of an extra amount, that would be a violation of the policy. It strikes me, however, that application could not be made in this case. To my mind it means converted into a mill or manufactory, and I am further induced to think that is the true construction, because the very last provision provides "or any manufactory or mechanical business which requires a furnace or oven." So they thus made a distinction

between a mill and a manufactory and a manufacturing business carried on on the premises; so that I do not think that any of the evidence would justify the assumption that it has been turned into a mill or manufactury—a manufactory in the sense of these conditions.    [3d assignment of error.]

2. "*Or for storing or keeping any of the articles;*" *that is, for storing or keeping them he would be liable to pay an additional risk; and it is here contended that by the evidence it is shown that sulphur was used for certain purposes about the premises. Whether that would justify you in believing that they come within the provision against storing or keeping those articles is a question I leave for you to decide.   Of course, every man has a right to keep a small amount of these articles without infringing—for instance, a man might be prohibited from keeping or storing gunpowder, but you would hardly think if you were to hang up your powder-flask on coming home from a hunting trip, it would fairly come within the provision.   There is a question between these two extremes whether the amount of this material used would justify your saying they were storing and keeping sulphur on these premises.   I leave that for you to decide on the evidence.* [4th assignment of error.]

There is another provision in this 17th section, upon which, in my opinion, this controversy turns altogether.   It is that they agree that persons exercising any of the trades, occupations herein mentioned, or making use of the premises insured for any other business that will increase the risk.   Of course it would be impossible for a company to put down in a list all the cases in which the risk might be increased, because a slight variation in the mode employed by the tenant would prevent the company from taking advantage of it ; and, therefore, they have said, and it is a question of fact in this case for you to determine whether the business carried on increased the risk. Of course the selling brooms is no risk, and nobody pretends it—it was not the selling of brooms and wooden ware.   It was the bleaching that was carried on in one of the stories.   You have heard the evidence about that.   You have heard how this bleaching room was managed.   It was a room with shelves all around filled with broom corn.   In the centre of the room were two bricks on the floor, on which rested an iron box filled with sulphur.   On retiring for the night, the sulphur was set

on fire, the door locked, and thus left till morning, the box being covered with an iron perforated cover.

Now the question is, as I have said, did that increase the risk of this store? About as good a way of testing this as any other, would be to suppose you occupied the third story with all your goods and chattels, and the man below you had a room of this kind. Would you consider that you were as safe as if it were used for ordinary purposes? Would you or would you not consider your risk as increased in consequence of this bleaching room being underneath or above the floor which you occupied? This is a question for you to determine.

There is another point in this case also, which is, that some one, on two different years, not consecutive—I think a year intervening—paid the increased risk on this building for the manufacture of these brooms. One year it was $70; the other year it was $30. And the defendant contends, and that is the recollection of Mr. Lex, that this lady—some lady—came there and had conversation with him which was impressed upon his mind in consequence of his telling her it was a violation of the policy. She then was worried about that because it had been transferred as collateral security to the mortgagee of the property. He then said, "Well, you can pay a license, if you please, for carrying this on." In consequence of that conversation she did pay at one time $70, and at another $30. After that no more was paid. That fact, however, of this lady having been there is positively denied. As far as she is concerned, she says she did not do it. Some one apparently did; it does not appear who paid that sum. This lady denies it. Of course it is for you to decide which you choose to believe in regard to that. If you should believe this lady did it, it would be very strong evidence that the parties had agreed that this was an extra hazardous risk, because nobody would pay for an increased risk if their contention was that it was not an increased risk. If you believe that the parties both agreed, and that for some time an increased risk was paid, it would be strong evidence that it was extra hazardous.

The contention also was that at the expiration of these policies their invariable habit is to notify the person that

policy has expired. They have nothing to do beyond that. Of course, it is none of their business whether you choose to go on paying an extra hazardous risk or not. The company cannot know whether you may not be paying it for a temporary cause for a year or two from the fact of your not insuring beyond that. You insure for a year. They send you a notice. Nothing more is done. It is for the insured himself whenever he is going to use the premises for any other purposes which make the risk extra hazardous—it is for him to pay it. It is not for them to look out for it. They say all we have is a policy on a store. If you are going to do anything else, it is your business to come, according to the 13th section, "If any alteration is made the insured shall forthwith give notice to the association and pay such additional risk as may be required."

The defendant's points and the answers thereto were as follows:

1. "If any alteration was made in the occupancy of the "building insured, affecting the risk, and no notice of the "same was given to the Fire Association, or additional pre-"mium paid to cover the period of such increased risk in "accordance with the provisions of section XIII of the Terms "and Conditions annexed to the Policy then the plaintiff cannot "now recover."

Affirmed.

2. "That the keeping and use of sulphur on the property "was a violation of the express provisions of section XVII "of the Terms and Conditions of the policy, and if sulphur "was so kept and used in the property, the plaintiff cannot "now recover."

If the premises were used for the storing or keeping sulphur that is true. It is for the jury to say whether that has been established.

3. "If the jury find that the fumes of burning sulphur "prevented the firemen from entering the property at the time "of the fire, and interfered with the extinguishment of it, "then the evidence produced of the amount expended in

"rebuilding is not the proper standard to measure the plain-
"tiff's loss."

The answer to this depends entirely whether the insurance
was or was not void.  If the plaintiff had under the policy a
right to use the building as she was using it, the difficulty of
extinguishing fire was of no moment.  If the use she was
making was a violation of the policy, the plaintiff should not
recover anything.

4. "That if the building was used for manufacure of
"brooms it was an alteration within the meaning of the said
"section XIII, and required notice and payment of the addi-
"tional premium therein provided for."

That is a question for you to decide.  If the manufacture
of brooms, including the bleaching room, increased the risk
for which this building was originally insured, your verdict
should be for the defendant.

---

During the trial the Court allowed a witness (Fretz) who
occupied the premises, whether he had received a notice that
the privilege to make brooms had expired.  [First error.]

The Court refused to admit the books of the Association, by
which it was offered to prove that on two previous occasions
extra payments had been made for the license to make brooms.
[Second error.]

As large a quantity as a barrel of sulphur had been kept at
one time.

*William E. Littleton* and *E. Coppee Mitchell, Esqs.*, for the
Fire Association, plaintiff in error, cited: Reaney vs. Cul-
bertson, 21 Pa., 507; Esser vs. Linderman, 71 Pa., 76; Bryant
vs. Haggerty, 87 Pa., 256; Harvey vs. Vandergrift, 89 Pa.,
346; Insurance Co. vs. Kroegher, 83 Pa., 64; Insurance Co.
vs. Lenheim, 89 Pa., 497; McClure vs. Insurance Co., 90 Pa.,
277; Insurance Co. vs. Schwenk, 95 Pa., 89; Albrecht vs.
Breder, 12 W. N. C., 170; Welsh vs. Cooper, 8 Pa., 218.

*M. J. Mitcheson, Esq.*, contra, cited: Insurance Co. vs.
Brock, 57 Pa., 74; Insurance Co. vs. Kepler, 95 Pa., 492;
Insurance Co. vs. Gruver, 100 Pa., 266; Insurance Co. vs.
Moyer, 97 Pa., 441; Insurance Company vs. Coatesville Shoe

Factory, 80 Pa., 407; Insurance Co. vs. Cropper, 32 Pa., 351; White vs. Smith, 33 Pa., 186; Insurance Co. vs. Burroughs, 69 Pa., 43; Insurance Co. vs. Evans, 13 W. N. C., 203; Mears vs. Insurance Co., 92 Pa., 15; Schott vs. Harvey, 105 Pa., 322.

The Supreme Court affirmed the judgment of the Common Pleas on March 2, 1885, in the following opinion, per

Paxson, J.:

There was technical error in overruling the objection to the question put to the witness Fretz. (See 1st assignment.) There was nothing in the case to show that the plaintiff was entitled to the notice referred to, or that it was the duty of the defendant to send it. The question was irrelevant; the answer was unimportant, and the result did no harm to any one. We do not reverse for such reasons.

The second assignment is not sustained. The books of the defendant company were not evidence against the plaintiff. They had, moreover, been used by the witness to refresh his recollection, and all that could have been shown by them was distinctly proved by the witness.

The third, fourth and fifth assignments are such a wide departure from the rules of Court, that we must decline to consider them. They allege errors in the charge of the Court, but, instead of giving the language of the Court, they set forth the effect of the charge, or what the learned counsel understood by it. Rule XXIII requires that "when the error assigned is to the charge of the Court, or to answer to points and answers referred to, must be quoted *totidem verbis* in the specification." We also call attention to Mr. Outerbridge's notes on pages 37 and 38 of Rules of Court, where a number of cases are cited, showing the reason of the rule and the importance of observing it. Neither of the specifications are assigned in accordance with the rules. The points are set out, but the answers are not given, except by a reference to another page of the paper-book. Both the point and the answer should appear in the assignment. As this departure is not so wide as the other, we will consider the questions they involve.

By the defendant's second point the Court was asked to instruct the jury "that the keeping and use of sulphur on the

property was a violation of the express provisions of section XVII of the terms and conditions of the policy, and if sulphur was so kept and used on the property the plaintiff cannot now recover;" to which point the learned Judge answered: "If the premises were used for the storing or keeping of sulphur, that is true. It is for the jury to say whether that has been established." It is difficult to see any objection to this answer. The Court affirmed the defendants' point if the jury found the facts of which it was predicated.

The defendant's third and fourth points were correctly answered. The fact that the fumes of burning sulphur prevented the firemen from entering the building at the time of the fire had no significance if the plaintiff had the right to use the building in the manner she was using it. In other words, if she had the right under the policy to keep sulphur there, it mattered not that the firemen were driven back by its fumes. And the Court very properly said in answer to the fourth point, that if the manufacture of brooms increased the risk, the verdict should be for the defendants.

Judgment affirmed.